UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 2:19-cv-122-DBH |
| | ) | |
| GLOBAL PARTNERS LP, | ) | |
| GLOBAL COMPANIES LLC, | ) | |
| CHELSEA SANDWICH LLC, | ) | |
| | ) | |
| Defendants | ) | |

**PROCEDURAL ORDER**

Under the United States Attorney General's authority and at the Environmental Protection Agency's request, the United States has asked this Court to approve and enter a decree against the defendants in connection with a Complaint the United States filed in this Court on March 25, 2019. The Complaint charges that the defendants have been emitting volatile organic compounds (VOCs) beyond approved limits at their petroleum storage facility in South Portland, Maine, violating the Clean Air Act and the Maine State Implementation Plan. The defendants have consented to the proposed decree; in other words, the parties have settled the case, and they want this Court to order the relief they have agreed on. There was a public comment period on the proposed decree from April 1 until July 1, 2019.

The United States asserts that this Court's role in deciding whether to approve the settlement and the decree is limited. Gov't's Mot. to Enter Consent

Decree at 15 (ECF No. 19). It states that it is up to the United States whom to sue and on what claims—in this case, the Complaint addressed only the formation of ground-level ozone that may occur as a result of excess or unlicensed emissions of volatile organic compounds (VOCs) at the defendants' South Portland facility—and that the Court is to evaluate only whether, in light of the Complaint's scope as filed, the United States' proposed decree is fair (procedurally and substantively), adequate, reasonable, faithful to the Clean Air Act's objectives, and not illegal, the product of collusion or against the public interest. Gov't's Mot. to Enter Consent Decree at 16-18.[1]

In support of the proposed decree, the United States has filed a motion, a few declarations, all the public comments it received (about 90, almost universally critical), and its response to the comments. Gov't's Mot. to Enter Consent Decree & attached exhibits. The defendants have filed nothing.

Before ruling on the motion to enter the decree, I ask the parties to address the following:

---

[1] In City of Bangor v. Citizens Communications Co., the First Circuit stated:
> In suits involving the United States, courts have developed a three-pronged inquiry: is the decree "reasonable, faithful to the statute's objectives, and fair (both procedurally and substantively)"? This inquiry is similar to the one used by courts when reviewing consent decrees generally: "District courts must review a consent decree to ensure that it is 'fair, adequate, and reasonable; that the proposed decree will not violate the Constitution, a statute or other authority; [and] that it is consistent with the objectives of Congress. . . .'"

532 F.3d 70, 93 (1st Cir. 2008) (citations omitted). In the Second Circuit, the standard is "whether the proposed consent decree is fair and reasonable, with the additional requirement [in an injunction case] that the 'public interest would not be disserved.'" U.S. SEC v. Citigroup Glob. Mkts., Inc., 752 F.3d 285, 294 (2d Cir. 2014). That includes assessing the "basic legality of the decree," whether the terms are "clear," whether it resolves the "actual claims in the complaint," and whether there was "improper collusion or corruption of some kind." Id. at 294-95. The Second Circuit rejects the "adequacy" component, saying it is limited to class action settlements. Id. at 294.

1. In assessing the procedural fairness of a consent decree, courts customarily look at the litigation history, and the risks and costs of litigation. In City of Bangor, the First Circuit added: "To gauge procedural fairness, 'a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance.'" City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 96 (1st Cir. 2008). Often in such cases, the lawsuit has been pending in the court for years and the court therefore has institutional knowledge of the adversarial and negotiation process that has occurred, as well as the factual and legal risks and issues.[2] Here, there is no such history because the United States filed the Complaint the same date it filed the proposed decree settling the case. The defendants have not answered the Complaint, so I do not even know what is factually or legally contested, nor what affirmative defenses might be available. Moreover, the United States has provided only generalities about the litigation's risks and costs,[3] and unsupported assertions that

---

[2] For example, in City of Bangor, a CERCLA case, the district court had the case before it for five years, including summary judgment practice and a partial bench trial, before the consent decree was proposed. 532 F.3d at 76-84. In Comunidades Unidas, involving the Clean Air Act and other environmental statutes, the proceedings had "lasted over five and one half years." U.S. v. Comunidades Unidas Contra La Contaminacion, 204 F.3d 275, 280 (1st Cir. 2000). In Charles George Trucking, a CERCLA case, the court referred to "a district court's mastery of a factually complex case—a mastery that is often, as in this instance, acquired through painstaking involvement over many years." U.S. v. Charles George Trucking, Inc., 34 F.3d 1081, 1085 (1st Cir. 1994).

[3] The United States' motion states:
> As in any litigated matter, we expect that Defendants would challenge the United States' claims. While we maintain the validity of the United States' claims, we recognize that there is risk and uncertainty if this case, as with any case, were to be litigated. It is likely that the resolution of this matter would require the testimony of technical experts with specific knowledge relating to a number of specialized areas, including the design and function of heated petroleum storage tanks, the best methods for measuring actual and potential VOC emissions from such tanks, and the extent of environmental harm associated with such emissions. Such expert-intensive litigation likely would result in a time-consuming proceeding that would consume Government resources, including the

3

negotiations were hotly contested and at arms' length.[4]  Should the record contain more for me to consider on this issue?

    2.    The government refers to actions taken by state and local authorities since it lodged the proposed decree.  Gov't's Mot. to Enter Consent Decree at 24, 26.  Is there legal authority supporting the argument that those voluntary actions by others are relevant to my assessment of the proposed consent decree and its scope?

    3.    The proposed decree contains a section on procedures and burden of proof for how it can be enforced in this Court in the future.  See Proposed Consent Decree Section X, ¶¶ 50-55 (ECF No. 4-1).  Does this Section affect the Court's contempt power and the legal standards for its exercise?  Have other

---

        limited time of EPA enforcement staff, without any guarantee of the United States succeeding on the merits.

Gov't's Mot. to Enter Consent Decree at 8-9 (ECF No. 19).  This reads like a template that could be used in any environmental lawsuit, requiring insertion only of "heated petroleum storage tanks" and "VOC emissions."

[4] In Comunidades Unidas, the First Circuit stated: "the question is whether the record contains adequate facts to support the decision of the district court to approve the proposed compromise." 204 F.3d at 280.  Here, the United States tells me:

        The proposed Consent Decree resulted from procedurally fair settlement negotiations.  The negotiations were conducted at arms-length, and continued for a lengthy period of time, culminating in the lodging of the proposed Consent Decree with the Court.  The parties engaged in contentious and extensive negotiations concerning the terms of the Consent Decree, including the injunctive relief that Defendants have agreed to perform.  Throughout the entirety of this lengthy process, each side was represented by experienced counsel, and expert consultants with technical and engineering experience participated in the negotiations.  There is no evidence that the parties proceeded other than in good faith.  The Decree reflects the parties' careful and informed assessment of how to bring Defendants into compliance with the Act.

Gov't's Mot. to Enter Consent Decree at 19-20; see also id. at 9 ("After lengthy settlement negotiations, in which each side was represented by experienced counsel and consulted with experts in the relevant technical areas, Defendants and EPA reached a resolution, the terms of which are reflected in the Consent Decree.").  These statements are only the ipse dixit of the lawyers for the United States seeking approval, not based upon any record source or affidavit.  Ironically, that same passage includes a footnote where the United States criticizes some public comments that question the motives or manner of entering the settlement.  The United States says that those are "bare accusations of wrongdoing, without specifics or otherwise pointing to particular record references," id. at 19, n.68, a description that is pertinent to its own submission.

4

courts adopted these procedures and burdens of proof?  What is the authority for them?

The parties shall file any response by November 22, 2019.

**SO ORDERED.**

**DATED THIS 31ST DAY OF OCTOBER, 2019**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**