| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GLOBAL PARTNERS LP, | ) |
| GLOBAL COMPANIES LLC, and | ) |
| CHELSEA SANDWICH, LLC | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil No. 2:19-cv-00122-DBH

**CONSENT DECREE**

# TABLE OF CONTENTS

I.    **JURISDICTION AND VENUE** .................................................................................2
II.   **APPLICABILITY** .................................................................................................3
III.  **DEFINITIONS** ....................................................................................................4
IV.   **CIVIL PENALTY** ................................................................................................5
V.    **COMPLIANCE REQUIREMENTS** ...............................................................6
VI.   **SUPPLEMENTAL ENVIRONMENTAL PROJECT** ..................................8
VII.  **REPORTING REQUIREMENTS** ...............................................................16
VIII. **STIPULATED PENALTIES** ........................................................................18
IX.   **FORCE MAJEURE** ...........................................................................................22
X.    **DISPUTE RESOLUTION** ..............................................................................24
XI.   **INFORMATION COLLECTION AND RETENTION** ..............................26
XII.  **EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS** ..................28
XIII. **COSTS** .................................................................................................................30
XIV.  **NOTICES** ............................................................................................................30
XV.   **EFFECTIVE DATE** ...........................................................................................32
XVI.  **RETENTION OF JURISDICTION** ..............................................................32
XVII. **MODIFICATION** ..............................................................................................33
XVIII.**TERMINATION** ...............................................................................................33
XIX.  **PUBLIC PARTICIPATION** ...........................................................................34
XX.   **SIGNATORIES/SERVICE** ..............................................................................34
XXI.  **INTEGRATION** ................................................................................................35
XXII. **FINAL JUDGMENT** .........................................................................................35
XXIII.**26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION.** ...................35
XXIV.**APPENDIX** ........................................................................................................36

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendants, Global Partners LP ("Global Partners"), Global Companies LLC ("Global Companies"), and Chelsea Sandwich LLC (collectively, "Defendants"), violated Sections 502(a) and 503(c), of the Clean Air Act (the "Act"), 42 U.S.C. § 7661a(a) and 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.7(b), and the Maine state implementation plan ("ME SIP"), including federally approved portions of Maine's air pollution control regulations, 06-096 Code of Maine Rules, Chapters 100-165, promulgated by the Maine Department of Environmental Protection ("ME DEP").

The Complaint alleges that Defendants violated the Act and the Maine SIP by failing to obtain an emission license that addresses volatile organic compounds ("VOCs") from heated asphalt and No. 6 oil storage tanks, by exceeding total VOC emission limits under an existing state license, by failing to take appropriate VOC emission control measures, and by failing to apply for an operating permit under Title V of the Act, in connection with the Defendants' ownership and operation of a petroleum storage and distribution facility known as "Global Portland," located at 1 Clark Road, South Portland, Cumberland County, Maine 04106 (the "Facility").

Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between and among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.        JURISDICTION AND VENUE

1.        This Court has jurisdiction over the subject matter of this action, under 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 113(a)(1), (a)(3), and (b) of the Act, 42 U.S.C. §§ 7413(a)(1), (a)(3) and (b), and over the Parties.  Venue lies in this judicial District under Sections 113(a)(1), (a)(3), and (b) of the Act, 42 U.S.C. §§ 7413(a)(1), (a)(3) and (b), and 28 U.S.C. §§ 1391(b)-(c) and 1395(a), because all or a substantial part of the events or omissions giving rise to the claims in this Complaint occurred within this District, all or a substantial part of the property that is the subject of this action is situated in this District, the Defendants are subject to the Court's personal jurisdiction, and the civil penalties sought in this action have accrued in this District.  For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants, and consent to venue in this District.

2.        For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted under Sections 502(a), 503(c), and 113(a) of the Act, 42 U.S.C. § 7661a(a), 42 U.S.C. § 7661b(c), 42 U.S.C. § 7413(a), 40 C.F.R. § 70.7(b), and the ME SIP.

## II.        APPLICABILITY

3.        The obligations of this Consent Decree apply to and are binding upon the United States, Defendants and any of their successors or assigns, and any other entities or persons otherwise bound by law.

4.     No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented.  Subject to the foregoing sentence, no later than the date of transfer of ownership or operation of the Facility, Defendants shall provide notice to the EPA in accordance with Section XIV (Notices) of the transfer and an agreement executed by the Defendants and the transferee indicating that (1) the transferee has received a copy of this Consent Decree and (2) the transferee shall comply with the Defendants' obligations of the Consent Decree.  Upon written request, Defendants shall provide EPA a copy of the final written sales agreement for the Facility, which request and response shall be subject to 40 C.F.R. § 2.203 and related case law.  Any attempt to transfer ownership or operation of the Facility during the term of this Consent Decree without complying with this Paragraph constitutes a violation of this Decree.

5.     Defendants shall provide a copy of this Consent Decree to all officers, employees, contractors, and agents whose duties might reasonably include overseeing compliance with any provision of this Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.     DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the Act, the ME SIP, or other federal or state regulations shall have the meanings assigned to them in the Act, the ME

SIP, or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Complaint" shall mean the complaint filed by the United States in this action.

"Consent Decree" or "Decree" shall mean this Decree.

"Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

"Defendants" shall mean Global Partners LP, Global Companies LLC, and Chelsea Sandwich LLC.

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

"Effective Date" shall have the definition provided in Section XV (Effective Date).

"Heated Bulk Storage Tank" shall mean a bulk storage tank with a shell capacity of greater than 30,000 gallons containing either No. 6 oil or asphalt.

"Open Federal Financial Assistance Transaction" shall mean a grant, cooperative agreement, loan, federally guaranteed loan guarantee, or other mechanism for providing federal financial assistance for which the performance period has not yet expired.

"Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

"Parties" shall mean the United States and Defendants.

"Project Dollars" shall mean Defendants' expenditures, excluding administrative costs, incurred or made in carrying out the environmental project, as provided in Section VI (Supplemental Environmental Project) of this Consent Decree.

"Section" shall mean a portion of this Decree identified by a roman numeral.

"State" shall mean the State of Maine.

"United States" shall mean the United States of America, acting on behalf of EPA.

## IV.    CIVIL PENALTY

8.    Within 30 Days after the Effective Date, Defendants shall pay the sum of $40,000.00 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. ¶ 1961 as of the date of lodging.

9.    Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Maine after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made under this Consent Decree.  The FLU will provide the payment instructions to:

> Global Partners LP
> 800 South Street, Suite 500
> Waltham, MA 02453
> Attn: Philip E. Segaloff
> Tel: 781-398-4436
> Email: psegaloff@globalp.com

on behalf of Defendants.  Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIV (Notices).

At the time of payment, Defendants shall send notice that payment has been made: (i) to

EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIV (Notices); and (iii) to EPA in accordance with Section XIV (Notices). Such notice shall state that the payment is for the civil penalty owed under the Consent Decree in *United States v. Global Partners LP et al.* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-11428.

10. Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal income tax.

## V. COMPLIANCE REQUIREMENTS

11. Before termination of this Consent Decree under Section XVIII (Termination), and in any event for no less than five (5) years after the Effective Date, Defendants shall implement the following measures at the Facility:

a. Product Storage Conditions for Heated Bulk Storage Tanks. Commencing immediately after the Effective Date, Defendants shall have no more than four (4) Heated Bulk Storage Tanks containing either No. 6 oil or asphalt at the Facility. Of those Heated Bulk Storage Tanks, no more than two (2) shall contain No. 6 oil at any one time.

b. Tank Heating Conditions. Defendants shall not apply heat to the four Heated Bulk Storage Tanks allowed in Paragraph 11.a. for at least 120 "non-heating days" in the aggregate, on a rolling 12-month basis, commencing immediately after the Effective Date of this Consent Decree. A "non-heating day" is any calendar day during which heat is not added to one of the Heated Bulk Storage Tanks. Multiple "non-heating days" may accrue on any day where multiple Heated Bulk Storage Tanks are not heated on the same day, with each Heated Bulk Storage Tank that is not heated counting as a separate "non-heating day."

c. <u>Throughput Limitations</u>.  Commencing immediately after the Effective Date of the Consent Decree, Defendants shall comply with throughput limitations of 50 million gallons per year ("gpy") of No. 6 oil and 75 million gpy of asphalt, on a rolling 12-month basis.

d. <u>Supplemental Measures.</u>  Within 180 Days of the Effective Date, unless it is determined that further approvals from ME DEP or other local, state or federal entity are necessary for implementation, Defendants shall install, operate and maintain mist eliminators (the "Equipment") on the vents of each Heated Bulk Storage Tank in service at the Facility, in accordance with the work plan set forth in Appendix A to this Consent Decree.  Once the Equipment is installed and a Heated Bulk Storage Tank is in service, Defendants shall operate the Equipment at all times the Heated Bulk Storage Tank is heated, including when the tank receives product.

e. Within 60 Days after the Effective Date of this Consent Decree, Defendants shall apply for an amended State license for the Facility that incorporates conditions at least as stringent as those set forth above in subparagraphs (a) through (c) of this Paragraph 11.

f. Defendants shall operate the Facility in accordance with this Paragraph 11, for the longest of the following: (i) at least five (5) years after the Effective Date of this Consent Decree; or (ii) from the Effective Date until this Decree is terminated pursuant to Section XVIII (Termination); or (iii) until Defendants obtain a State license amendment that incorporates conditions at least as stringent as those set forth in subparagraphs (a) through (c) of this Paragraph 11.

12. <u>Permits</u>.  Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local license, permit, or approval, Defendants shall

submit timely and complete applications and take all other actions necessary to obtain all such licenses, permits, or approvals. Defendants may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VI. SUPPLEMENTAL ENVIRONMENTAL PROJECT

13. To improve air quality, Defendants shall perform a Supplemental Environment Project ("SEP") to replace and/or retrofit inefficient, higher-polluting wood-burning appliances and technologies in accordance with all provisions of this Section. This SEP is undertaken in part to address VOC emissions from the Facility. The EPA finds that VOC and nitrogen oxide (NOx) emissions both contribute to the formation of ozone. Ozone can be harmful to human health, by causing muscles in the airways to constrict, trapping air in the alveoli, making it more difficult to breathe deeply and vigorously, leading to shortness of breath and pain when taking deep breaths, causing coughing and sore or scratchy throat, inflaming and damaging airways, aggravating lung diseases such as asthma, emphysema, and chronic bronchitis, increasing the frequency of asthma attacks, making lungs more susceptible to infection, and causing chronic obstructive pulmonary disease. The replacement and/or retrofit of older wood-burning appliances and technologies will reduce NOx, and thus reduce ozone by addressing one of its precursors. In addition, the EPA finds that the SEP will help to reduce emissions of particulate matter, hazardous air pollutants ("HAPs"), and VOCs in Cumberland County, Maine.

14.     Consistent with the requirements of this Section, Defendants shall submit a SEP Work Plan to implement a wood-burning appliance replacement and/or retrofit project in Cumberland County, Maine.  Defendants may engage an appropriate non-profit organization, contractor or consultant to assist Defendants' implementation of the SEP ("Contractor").  Any such Contractor must be experienced in administering a wood-burning appliance replacement and/or retrofit project or be experienced with wood stove technology, experienced in performing community outreach, and otherwise qualified to assist Defendants' implementation of the SEP as set forth in this Section.

a.     The SEP shall replace or retrofit inefficient, higher-polluting wood-burning or coal appliances with cleaner-burning, more energy-efficient heating appliances and technologies.  The appliances that are replaced under this SEP shall be permanently removed from use and recycled/disposed of appropriately.

b.     To qualify for the SEP, the wood burning appliance must be in regular use in a primary residence or in a frequently used non-residential building (e.g., churches, greenhouses, schools) during the heating season, and preference shall be given to those appliances that are a primary or a significant source of heat.

c.     Defendants shall spend no less than $150,000, exclusive of administrative costs, to implement the SEP.  Defendants shall not use Project Dollars for any administrative costs associated with the implementation of the SEP, including any such costs incurred by any Contractor.  Defendants shall devote all Project Dollars to providing the wood-burning appliance replacements and retrofits, as set forth in this Section.  Defendants shall pay all administrative costs associated with implementing the SEP.  "Administrative costs" shall include costs associated with community outreach, including the distribution of information regarding the

SEP, as described below, and any other costs not spent on replacing or retrofitting wood-burning appliances, under this Section.

d.      Every participant that receives a new wood-burning appliance or retrofit of an existing wood-burning appliance shall receive information related to proper operation of their new appliance and the benefits of proper operation (*e.g.*, lower emissions, better efficiency), including, if applicable, the importance of burning dry seasoned wood and provision of a wood moisture meter.

e.      Within 30 Days from the Effective Date, Defendants shall submit a SEP Work Plan to the EPA for review and approval.  Defendants shall describe how the SEP Work Plan is consistent with the requirements of this Section of the Consent Decree and shall also include the following information:  (i) identification of any proposed Contractor;  (ii) identification of any other entities with which the Contractor proposes to partner to implement the SEP (*e.g.*, non-profit associations with expertise in wood stove technology and/or the health or environmental impacts of air pollution associated with wood stoves, weatherization offices, individual stove retailers, entities that will dispose of the old appliances); (iii) the type of appliances Defendants intend to make available through the SEP, the cost per unit, and the Project Dollars to be spent per unit; (iv) the criteria that will be used to determine which owners are income-qualified to receive full/near-full cost replacement, consistent with Paragraph 14.f., below; and (v) a description of proposed outreach to raise awareness of and interest in the availability of the wood-burning appliance replacement program within the Cumberland County, Maine area, as described in this Section and in the EPA-approved SEP Work Plan.  Such outreach shall include the distribution of information about the SEP and benefits of retrofitting or replacing non-EPA certified wood-burning appliances with newer cleaner burning stoves, proper

operation and installation of any wood burning appliances, and a description of financial and other incentives to participate in the SEP. Distribution channels for outreach may include, among other things, a dedicated website for the SEP, ads or public service announcements in media such as print, radio, television, and social media, press releases distributed to local and regional news outlets, wood stove retailers, gas and propane dealers, local fire departments, live presentations, phone banks, handing out leaflets, direct mail, and other appropriate means to convey information to residents of the Cumberland County, Maine area. .

   f.  Income eligibility of participants will be determined by proof of participation in a federal means-tested program that determines eligibility using the U.S. Department of Health and Human Services ("HHS") Poverty Guidelines, such as Supplemental Nutrition Assistance Program ("SNAP"); Head Start; National School Lunch Program; Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"); Low-Income Home Energy Assistance Program ("LIHEAP"); Weatherization Assistance for Low-Income Persons; or other proof of "low income," defined as income between 100% and 185% of the federal poverty level under the HHS Poverty Guidelines.

   g.  Defendants shall complete the SEP no later than two years after the approval of the SEP Work Plan, in accordance with the schedule and requirements in the approved SEP Work Plan, except that Defendants may request an extension of time from EPA to complete the Project if it appears likely that the SEP will not be complete within such two-year period despite Defendants' best efforts to implement the Project. EPA may, in its sole, unreviewable discretion, grant Defendants' request.

   h.  Defendants are responsible for the satisfactory completion of the SEP in accordance with the requirements of this Consent Decree. Defendants may use a Contractor in

planning and implementing the SEP and are responsible for any costs charged by any such Contractors.

i.        After review of the SEP Work Plan described in Paragraph 14.e., EPA shall, in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

j.        If the SEP Work Plan is approved pursuant to Paragraph 14.i.(a), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the SEP Work Plan is conditionally approved or approved only in part pursuant to Paragraph 14.i.(b) or 14.i(c), Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section X (Dispute Resolution).

k.        If the SEP Work Plan is disapproved in whole or in part pursuant to Paragraph 14.i.(c) or 14.i.(d), Defendants shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with Paragraph 14.j.  If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the Paragraph 14.j.

l.        If a resubmitted SEP Work Plan or portion thereof is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, or EPA itself may correct any deficiencies subject to Defendants' right to invoke dispute resolution in accordance

with Section X (Dispute Resolution) and the right of EPA to seek stipulated penalties in accordance with Section VIII (Stipulated Penalties).

m.     Any stipulated penalties applicable to the original SEP Work Plan submission, as provided in Section VIII (Stipulated Penalties), shall accrue during the 30-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

15.     With regard to the SEP, Defendants certify the truth and accuracy of each of the following:

a.     that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendants in good faith estimate that the cost to implement the SEP, exclusive of administrative costs, is no less than $150,000.00;

b.     that, as of the date of executing this Consent Decree, Defendants are not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     that the SEP is not a project that Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.     that Defendants have not received and will not receive credit for the SEP in any other enforcement action; and

e.     that Defendants will not receive any reimbursement for any portion of the

SEP from any other persons.

       f.     that Defendants are not a party to any Open Federal Financial Assistance Transaction that is funding or could fund the same activity as the SEP described in this Section.

       g.     that Defendants, before using any Contractor, have inquired whether it is a party to an Open Federal Financial Assistance Transaction that is funding or could fund the same activity as the SEP and has been informed by the Contractor that it is not a party to such a transaction.

     16.     <u>SEP Completion Report</u>.  Within 90 Days after completion of the SEP, Defendants shall submit a SEP Completion Report to EPA in accordance with Section XIV (Notices) of this Consent Decree.  The SEP Completion Report shall contain the following information:

       a.     a detailed description of the SEP as implemented;

       b.     a description of any problems encountered in completing the SEP and solutions thereto;

       c.     an itemized list of eligible SEP costs expended;

       d.     certification that the SEP has been fully implemented pursuant to the provisions of this Decree;

       e.     a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

     17.     EPA may, in its sole discretion, require information in addition to that described in Paragraph 16 (SEP Completion Report), in order to evaluate Defendants' SEP Completion Report.

18.     After receiving the SEP Completion Report, the United States will notify

Defendants whether or not Defendants have satisfactorily completed the SEP.  If Defendants

have not completed the SEP in accordance with this Consent Decree, stipulated penalties may be

assessed under Section VIII (Stipulated Penalties) of this Decree.

19.     Each submission required under this Section shall be signed by an official of

Defendants with knowledge of the SEP and shall bear the certification language set forth in

Paragraph 26.

20.     Any public statement, oral or written, in print, film, or other media, made by

Defendants making reference to a SEP under this Consent Decree shall include the following

language:  "This project was undertaken in connection with the settlement of an enforcement

action, *United States v. Global Partners LP et al.,* taken on behalf of the U.S. Environmental

Protection Agency under the Clean Air Act."

21.     For federal and state income tax purposes, Defendants agree that that they will

neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in

performing the SEP.

22.     Defendants shall not deduct any amounts paid under this Consent Decree pursuant

to this Section in calculating their federal, state, or local income tax.

## VII.     REPORTING REQUIREMENTS

23.     Defendants shall submit the following reports:

a.     By July 31 and January 31 of each year after the lodging of this Consent

Decree, until termination of this Decree pursuant to Section XVIII (Termination), Defendants

shall submit to EPA Region 1 and the United States Department of Justice, in accordance with

Section XIV (Notices), a semi-annual report for the preceding six months that shall include at a

minimum:  the status of any construction or compliance measures; completion of milestones; discussion of Defendants' progress in satisfying their obligations in connection with the SEP under Section VI (Supplemental Environmental Project), including, a narrative description of activities undertaken and the completion of any milestones set forth in the SEP Work Plan since the previous report, the number and type of appliances made available through the SEP, the cost per unit, and the number of Project Dollars spent; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance; any applications or reports submitted to state agencies; and a summary of costs incurred since the previous report.

b.     The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If any Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendants shall notify the United States of such violation and its likely duration, in writing, within 10 working Days of the Day any Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report.  Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendants become aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX (Force Majeure).

24.     Whenever any violation of this Consent Decree or any other event affecting Defendants' performance under this Decree, may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

25.     All reports shall be submitted to the persons designated in Section XIV (Notices).

26.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

27.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

28.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

29.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

# VIII.  STIPULATED PENALTIES

30.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

31.     Late Payment of Civil Penalty.  If Defendants fail to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

32.     Injunctive Requirements.  The following stipulated penalties shall accrue per violation per Day for each  violation of a requirement of Paragraph 11 (regarding product storage conditions, tank heating conditions, throughput limits, supplemental measures, state license application requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,000 | 31st Day and beyond |

33.     Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII (Reporting Requirements), or the requirements to timely submit to EPA a SEP Work Plan and a SEP Completion Report, under Section VI (Supplemental Environmental Project):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th Day |
| $500 | 15th through 30th Day |
| $750 | 31st Day and beyond |

34. **SEP Compliance**. If Defendants fail to satisfactorily complete the SEP by the deadline set forth in Section VI (Supplemental Environmental Project), subject to any extension pursuant to Paragraph 14.g., Defendants shall pay stipulated penalties for each day for which they fail to satisfactorily complete the SEP, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750 | 1st through the 14th Day |
| $1,250 | 15th through 30th Day |
| $1,750 | 31st Day and beyond |

35. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

36. Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

37. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

38. Stipulated penalties shall continue to accrue as provided in Paragraph 35, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the

agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph (c) of this Paragraph, below.

c.      If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

39.      Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

40.      If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

41.      The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

42.      <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable

law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.  FORCE MAJEURE

43.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, any entity controlled by Defendants, or any of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

44.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic transmission to EPA within 72 hours of when Defendants first knew that the event might cause a delay.  Within seven (7) Days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether,

in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.

45. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

46. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

47. If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 43 and

44. If Defendants satisfy this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

48. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

49. <u>Informal Dispute Resolution</u>. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants invokes formal dispute resolution procedures as set forth below.

50. <u>Formal Dispute Resolution</u>. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

51. The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any

supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

52. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 14 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

53. The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

54. Standard of Review

a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 50 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 50, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

55.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 38.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.     INFORMATION COLLECTION AND RETENTION

56.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendants' compliance with this Consent Decree.

57.     Upon written request, Defendants shall provide EPA or its authorized representatives splits of any samples taken by Defendants in connection with this Consent Decree.  Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

58.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

59.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants asserts such a privilege, they shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the

subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

60.     Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

61.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

62.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

63.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' Facility, whether related to the violations addressed in this Consent Decree or otherwise.

64.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or a Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 62.

65.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

66.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

67.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

68.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIV.  NOTICES

69.     Unless otherwise specified herein, whenever notifications, submissions, statements of position, or communications are required by this Consent Decree (referred in this Paragraph as a "notice" or "notices"), they shall be made electronically as described below, unless such notices are unable to be uploaded to the CDX electronic system (in the case of EPA) or transmitted by email (in the case of any other party).  For all notices to EPA, Defendants shall register for the CDX electronic system and upload such notices at

https://cdx.epa.gov/epa_home.asp.  Any notice that cannot be uploaded or electronically transmitted via email shall be provided in writing to the addresses below:

|  |  |
|---|---|
| As to the United States by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-11428 |
| As to the United States by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-2-1-11428 |

| As to EPA: | Christine Sansevero |
| | Senior Enforcement Coordinator |
| | U.S. EPA, Region 1 |
| | 5 Post Office Square |
| | Suite 100 – OES04-2 |
| | Boston, MA 02109-3912 |
| | Email: Sansevero.Christine@epa.gov |
| | |
| | William Chin |
| | Enforcement Counsel |
| | U.S. EPA, Region 1 |
| | 5 Post Office Square |
| | Suite 100 – OES04-4 |
| | Boston, MA 02109-3912 |
| | Email: chin.bill@epa.gov |
| | |
| As to Defendants: | Global Partners LP |
| | 800 South Street, Suite 500 |
| | Waltham, MA 02453 |
| | Attn: Edward J. Faneuil |
| | Tel: 781-398-4211 |
| | Email: efaneuil@globalp.com |
| | |
| | Global Partners LP |
| | 800 South Street, Suite 500 |
| | Waltham, MA 02453 |
| | Attn: Tom Keefe |
| | Tel: 781-398-4132 |
| | Email: tkeefe@globalp.com |
| | |
| With a copy to: | Nutter McClennen & Fish LLP |
| | 155 Seaport Boulevard |
| | Seaport West |
| | Boston, MA 02210 |
| | Attn: Michael Leon |
| | Tel: 617-439-2815 |
| | Email: mleon@nutter.com |

70.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

71.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.     EFFECTIVE DATE

72.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI.   RETENTION OF JURISDICTION

73.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII (Dispute Resolution and Modification, respectively), or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

74.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

75.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution).  The Party seeking the modification bears the burden of

demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. <u>TERMINATION</u>

76.     After Defendants have (i) installed the Equipment pursuant to Paragraph 11(d) and thereafter maintained satisfactory compliance with the requirements of Section V (Compliance Requirements) for a period of five years, (ii) completed the SEP pursuant to Section VI, (iii) complied with all other requirements of this Consent Decree, and (iv) paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

77.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

78.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X (Dispute Resolution).  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of their Request for Termination.

## XIX.   <u>PUBLIC PARTICIPATION</u>

79.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

80.  Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the U.S. Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

81.  This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.  INTEGRATION

82.  This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and

approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXII.  FINAL JUDGMENT

83.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

84.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability), Paragraph 5; Section V (Compliance Requirements), Paragraphs 11-12; Section VII (Reporting), Paragraphs 23 and 25-26 (except with respect to the SEP); and Section XI (Information Collection and Retention), Paragraphs 56-59, is restitution or required to come into compliance with law.

## XXIV.  APPENDIX

85.     The following appendix is attached to and part of this Consent Decree:

Appendix A is the Work Plan for the Supplemental Measures identified in Section V (Compliance Requirements).

Dated and entered this 19th day of December, 2019

/s/ D. Brock Hornby
D. BROCK HORNBY
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

Dated: March 20, 2019

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Dated: March 20, 2019

PATRICK B. BRYAN
Trial Attorney
DAVID L. WEIGERT
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8299 (PB)
(202) 514-0133 (DW)
patrick.bryan@usdoj.gov
david.weigert@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:

Dated: _Marl 1_, 2019

_____
KAREN MCGUIRE
Director
Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region 1

Dated: _2/27_, 2019

_____
WILLIAM D. CHIN
Enforcement Counsel
Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region 1

FOR GLOBAL PARTNERS LP:

Date: February 25, 2019

_____
Edward J. Faneuil

Title: _____
Executive Vice President

FOR GLOBAL COMPANIES LLC:

Date: _Febuary 25_, 2019        _____
                                        Edward J. Farnwil

Title:                          _____
                                Executive Vice President

FOR CHELSEA SANDWICH LLC:

Date: _February 25_, 2019

_Edward J. Ferrell_

Title:

Executive Vice President